## Case No. 17,527.

### WHITAKER v. The FRED LORENTS.

[2 West. Law Month. 520.]

District Court, D. Wisconsin. Jan., 1859.

**ADMIRALTY JURISDICTION—FEDERAL COURTS—PASSENGER ON RIVER STEAMBOAT—PERSONAL INJURIES.**

A passenger on board a steamboat on the Mississippi river, from a port in a state to another port in the same state can not claim the jurisdiction of the district court of the United States in that state, of a libel in rem for injuries sustained while on board as such passenger, through negligence of the officers in care of the boat; the boat being at the time on a trip between points or places in different states.

[Cited in U. S. v. The Seneca, Case No. 16,-251; The Daniel Ball, Id. 3,564.]

[This was a libel by Franklin Whitaker against The Fred Lorents to recover damages for injury sustained.]

MILLER, District Judge. The libel alleges that the steamboat Fred Lorents was used in navigating the waters of the Mississippi river; and made regular trips on said river, between the ports of Galena, in the state of Illinois, and the port of St. Paul, in the state of Minnesota, touching at the ports within the state of Wisconsin. The libellant was at Fountain City, in the state of Wisconsin, where the steamboat was lying, she then being on her down trip from St. Paul to Galena; and he took passage from Fountain City to Prairie du Chien, and paid the charges for such passage. That in consequence of the imperfect and unsafe construction of the steamboat, and of the negligence and improper conduct of the officers, and want of sufficient lights, the libellant was pressed by the crowd into an open hatchway, while the steamboat was preparing to land her passengers at Prairie du Chien, whereby he received the injuries described—to recover damages for which this suit is brought.

The libellant was a passenger on board the steamboat, from one port or place, to another port or place, within this state.

The constitution of the United States, in defining the powers of the federal courts, extends them "to all cases of admiralty and maritime jurisdiction." It defines how much of the judicial power shall be exercised by the supreme court only; and it was left to congress to establish other courts, and to fix the boundary and extent of their jurisdiction. The district courts could not assume jurisdiction without the aid of an act of congress. The act of 1789, organizing the courts, gives the district courts of the United States "exclusive original cognizance of all civil cases of admiralty and maritime jurisdiction, including all seizures, &c., on waters which are navigable from the sea, by vessels of ten or more tons burden, as well as upon the high seas." The Mississippi river is one of those rivers. The steamboat being a vessel of ten or more tons burden, I consider the matter of the libel to be within the admiralty cognizance of this court. But the question is, whether the libellant is entitled to claim the jurisdiction, and to subject this steamboat to admiralty process. By the constitution of the United States, "congress shall have power to regulate commerce with foreign nations, and among the several states."

In the case of Gibbons v. Ogden, 9 Wheat. [22 U. S.] 1, it is decided, that the power to regulate commerce, extends to every species of commercial intercourse, between the United States and foreign nations, and among the several states; and that this power did not extend to the purely internal commerce of a state. It is remarked by Marshall, C. J., in the opinion of the court: "It is not intended to say that those words (in the constitution) comprehend that commerce, which is completely internal, and which is carried on between man and man in a state, or between ports of the same state, and which does not extend to, or affect other states." "The genius and character of the whole government seem to be, that its action is to be applied to the external commerce of the nation, which affects the states generally; but not to that which is completely within a particular state, and with which it is not necessary to interfere for the purpose of executing some of the powers of the government. The completely internal commerce of a state may be considered as reserved for the state itself." In the case of New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344, which was a libel on a contract of affreightment, the court remarks: "The exclusive jurisdiction of the court in admiralty cases, was conferred on the national government, as closely connected with the grant of the commercial power. It is a maritime court, instituted for the purpose of administering the laws of the seas. There seems to be ground, therefore, for restraining its jurisdiction within the limits of the grant of the commercial power, which would confine it, in cases of contract, to those con-

cerning the navigation and trade of the country upon the high seas, with foreign countries, and among the several states." "Contracts growing out of the purely internal commerce of a state, are generally domestic in their origin and operation, and could scarcely have been intended to be drawn within the cognizance of the federal courts." The limitation of jurisdiction, as expressed in those, cases, would require that the contract of passage should be from a port or place in one state to a port or place in another state, to entitle a party to the admiralty jurisdiction of this court.

The act of congress, passed in 1845 [5 Stat. 726], extending the admiralty jurisdiction to the district courts, in states bordering on the Lakes, provides: "That the district courts of the United States shall have, possess, and exercise the same jurisdiction in matters of contract and tort arising in, upon, or concerning steamboats and other vessels of twenty tons burden and upwards. enrolled and licensed for the coasting trade, and at the time employed in business of commerce and navigation between ports and places in different states and territories," &c. In the case of Brooks v. The Peytona [Case No. 1,959], I refused cognizance of a libel for mariners' wages accruing on board, while the steamboat was employed on Lake Winnebago, exclusively within this state. And the supreme court of the United States recently, in the case of Allen v. The Fashion, 21 How. [62 U. S.] 244, which was taken up by appeal from this court, affirmed this principle. In that case, it appeared that leather was shipped from Manitowoc to be delivered at Milwaukee. which was jettisoned. The court decided, that as the contract of affreightment was confined to ports within the state, it was not the subject of admiralty cognizance, although the boat was on a voyage to Chicago, a port in the state of Illinois. So, in the case under consideration, the contract and also the cause of complaint were exclusively within this state. and the steamboat was on her voyage or trip to Galena, a port in the state of Illinois.

Although the act of 1845 is not the act under which this libel is filed. yet the decisions of this court in the foregoing cases. and the act itself. are upon the general principles of the admiralty jurisdiction of the federal courts. as extended by the constitution, and conferred by the act of 1789 [1 Stat. 73].

The libel must be dismissed for the want of jurisdiction.